Louis **NEBINSKI**

v.

**AMERICAN TRADING & PRODUC-
TION CORP.**

**Civ. A. No. 41040.**

United States District Court,
E. D. Pennsylvania.

Feb. 4, 1970.

Sidney Smolinsky, Philadelphia, Pa., for plaintiff.

Timothy Mahoney, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

MASTERSON, District Judge.

Presently before us is defendant's Motion for the Appointment of an Impartial Medical Expert. After a hearing, we have concluded, acting under Local Rule 27,[1] that this is an appropriate case for this Court to appoint an impartial expert.

As we listened to counsel describe the case at the pre-trial conference and as we read the medical reports for both

1. Local Rule 27 provides:

*Rule 27 Impartial Medical Examination*
(a) In any personal injury case in which, prior to the trial thereof, a judge shall be of the opinion that an examination of the injured person and a report thereon by an impartial medical expert or experts would be of material aid to the just determination of the case, he may, after consultation with counsel for the respective parties and after giving counsel a hearing, if such hearing be requested by either counsel, order such examination and report. The examination will be made by a member or members of a panel of examining physicians designated for their particular qualifications by the Medical Society of the State of Pennsylvania after consultation with the Court. Copies of the report of the examining physicians will be made available to all parties.
(b) The compensation of the expert or experts shall be fixed at the termina-

tion of the case by the judge ordering the examination and shall be paid by the losing party, unless the Court otherwise directs. Such judge may direct the deposit, by the moving party, or security which may be used for the payment of such compensation in the discretion of the Court.
(c) If the case proceeds to trial after such examination and report, either party may call the examining physician or physicians to testify or the trial judge may, if he deems it desirable to do so, call the examining physician or physicians as a witness or witnesses for the Court subject to questioning by any party.

This Rule was adopted and became effective on January 1, 1970, and is substantially the same Rule as was adopted by this District in June, 1958, as its then Rule 22.

sides, it became apparent to the Court that this case is basically a dispute between the defendant's doctor and the plaintiff's doctor. The plaintiff's doctor has written several reports, two of which the Court has read, the substance of which is that he believes that the plaintiff is suffering from a ruptured intervertebral disc at the level of C–5/C–6 which is impinging upon the nerves in plaintiff's neck and rendering him totally disabled as of the present time. He also suggests that a narrowing which appears on an x-ray between C–6 and C–7 might indicate a degeneration of that disc, and also that disc may be impinging upon nerves and causing disability.

The defendant's doctor, on the other hand, finds degenerative hypertrophic changes in the cervical spine and attributes the narrowing, visible on the x-rays between C–5 and C–6 and between C–6 and C–7, to such degenerative changes. He states that these changes are consistent with the normal aging process of the cervical spine in a man the plaintiff's age and concludes that there is no evidence of any disabling symptoms.

The plaintiff has demanded $85,000 in settlement of this case and treats it as one of total disability for a man 46 years of age. The defendant, on the other hand, contends in substance that the injury was a minor one, that it caused no serious disability, and that the plaintiff is not now disabled from performing his normal duties.

No definitive diagnostic studies have been performed on the plaintiff. An electromyography was performed at the plaintiff's doctor's suggestion, and the results of these studies were inconclusive for any nerve involvement in the plaintiff's neck. No cervical myelogram has been performed. The plaintiff's doctor has twice suggested surgery, but no surgery has been performed.

Thus we have a sharp dispute between two qualified orthopedists, one of whom claims that the x-rays and the clinical picture are consistent with one, and possibly two, ruptured intervertebral discs in the plaintiff's cervical spine; the other claiming in substance that these very same x-rays and clinical signs show no evidence of any disabling injury.

This is typical of the type of medical dispute which confronts this Court time and again in negligence cases, which comprise the largest portion of its backlog. We would be blind not to realize that the disputing doctors here almost always appear on behalf of the same side. This Court has had both doctors before it on numerous occasions. We have read countless reports by the plaintiff's doctor in which he finds a serious injury, even though the medical evidence of that injury is not clearcut. In the very same cases, this Court has read countless reports of the defendant's doctor finding that the very same medical evidence does not indicate that the plaintiff suffered from any serious injury at all. As a result of fifteen years' experience as a litigator and almost three years as a trial judge, we have concluded that very often regular professional witnesses tend to become advocates of the clients who retain them. This leaves the Court and the jury in an impossible position to ascertain the real truth.

The matter presently before us is typical of those cases to which we have referred. In these circumstances, then, we find that if it is appropriate for the Court to appoint an impartial medical expert in any case, it is appropriate to appoint one in this case. The medical expert whom we will appoint, Dr. John Sbarbaro, is personally known to the Court to be a highly qualified orthopedic physician in whose skill, judgment, and integrity the Court reposes great confidence. He has not made it a practice to appear as a professional witness for either plaintiffs or defendants. In the Court's opinion, a report from Dr. Sbarbaro, after he has received all of the x-rays and all of the preceding medical reports and has examined the plaintiff, would be of material aid to the just determination of the case.

938

We might also note that in the last two and a half years this Court has appointed impartial medical experts in approximately a dozen cases where there were sharp disputes between regularly appearing medical experts for plaintiffs and defendants. In every one of these cases, after the impartial medical expert had made his study and reported to counsel and the Court, the case was settled amicably by the parties. This is probably one of the most effective and desirable functions performed by an impartial medical expert.

Such a result is quite possible in the case at bar. If Dr. Sbarbaro writes a report concluding that the plaintiff is indeed totally disabled by reason of the presence of one or more ruptured intervertebral cervical discs, the defendant will have to evaluate this case totally differently and come to grips with what would appear to be a very serious case of total disability. If, on the other hand, Dr. Sbarbaro concludes that there is no evidence of any presently disabling symptoms the plaintiff will have to re-evaluate his position. This, of course, will depend almost entirely on the cogency and persuasiveness of the report that is filed by the independent medical expert.

Thus, the use of the independent medical expert very often materially aids in the just determination of the cases by making it possible for counsel, often with the aid of the Court, to come together and make an amicable disposition of the case that might otherwise take a week or more to try.

With respect to the question of whether the independent medical expert will be designated as such to the jury if the case is called to trial, the Court reserves judgment. We may conclude that the doctor is simply to be called as an expert by either party without reference to the method by which he was appointed to examine the plaintiff. That will depend upon the nature of the report itself and upon the actual situation at trial and the Court's conclusion then as to what would be just and fair to the parties to this litigation.

The Court recognizes that no doctor is infallible and that merely because there is a disagreement between doctors, and that a physician appointed as an impartial medical expert agrees with one or the other, does not necessarily mean that the one with whom the impartial expert agrees is right. Accordingly, we will reserve judgment until the conclusion of the trial as to the appropriate jury charge.

The defendant, who is the movant, is required to deposit adequate security to cover the initial examination; and the Court will order that the defendant deposit the sum of $200 to cover the examination, review of the previous medical reports, possible additional x-rays, and the preparation of a report to the Court and to counsel.

The Court believes its order in this matter is supported by the following cases: Hankinson v. Van Dusen and Kraft, No. 12740 in U. S. Court of Appeals, Third Circuit, cert. denied 359 U. S. 925, 79 S.Ct. 608, 3 L.Ed.2d 628 (1959); Porta v. Pennsylvania Railroad Company, Civil Action No. 21,293 in U. S. District Court, Eastern District of Pennsylvania, aff'd 272 F.2d 396 (3rd Cir.1959); Dill v. Egan et al., 3 Cir., 292 F.2d 839. See also, Van Dusen, The Impartial Medical Expert System: The Judicial Point of View, 34 Temple L.Q. 1 (1961); Van Dusen, A United States District Judge's View of the Impartial Medical Expert System, 32 F.R.D. 481, 498–520 (1962).